IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00097-PAB-SKC

ZVELO, INC.,

    Plaintiff,

v.

AKAMAI TECHNOLOGIES, INC.,

    Defendant.

## DEFENDANT AKAMAI TECHNOLOGIES, INC.'S MOTION TO DISMISS

Pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Akamai Technologies, Inc. ("Akamai") moves to dismiss the Complaint of Plaintiff zvelo, Inc. ("zvelo"), and in support thereof states as follows:

### I.     PRELIMINARY STATEMENT

zvelo alleges that Akamai has misappropriated alleged trade secrets related to zvelo's database of categorized URLs.  But zvelo has failed to state an actionable claim for trade secret misappropriation, unjust enrichment, or injunctive relief.  For that reason and as explained in greater detail below, zvelo's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

### II.     CERTIFICATION OF CONFERRAL

Pursuant to Practice Standard III.F.2, counsel for Akamai certifies that on February 6, 2019, they conferred with zvelo's counsel about this Motion, and zvelo opposes the Motion.

1

### III. STATEMENT OF FACTS

Akamai is a content delivery network and cloud service provider that is incorporated in Delaware and operates its principal place of business in Massachusetts. It has offices across the world and throughout the United States. Akamai offers many products and services. Among them is its AnswerX Recursive DNS ("AnswerX"). AnswerX can help customers lower their network costs and secure critical information technology infrastructure.

### IV. ARGUMENTS & AUTHORITIES

#### A. zvelo Has Failed To State A Claim For Relief.

This Court should dismiss zvelo's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (2007)). "A plaintiff meets this standard when it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gulf Coast Hotel-Motel Ass'n v. Mississippi Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 504 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677).

The Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *RE/MAX, LLC v. Quicken Loans, Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (internal quotation omitted). "At the same time, however, a court need not accept conclusory allegations." *Id*. (internal citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

2

to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a claim should be dismissed where well-pleaded facts fail to warrant an inference that a claim is plausible and not merely possible. *Id*. at 678–79. One way in which the Court might conduct its analysis is to identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *2 (D. Colo. Aug. 31, 2010) (citing *Iqbal*, 556 U.S. at 678). Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

> **1. Plaintiff has failed to allege misappropriation of trade secrets under the Defend Trade Secrets Act or the Colorado Uniform Trade Secrets Act.**

zvelo has asserted trade secret claims under 18 U.S.C. § 1836, et seq. ("DTSA") and Colo. Rev. Stat. § 7-74-101, et seq. ("CUTSA"). zvelo has not adequately pled either of its trade secret claims. To state a claim for misappropriation of trade secrets under either DTSA or CUTSA, a plaintiff must allege that: (1) it possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) defendant knew, or should have known, that the trade secret was acquired by improper means.[1] *RE/MAX*, 295 F. Supp. 3d at 1173; 18 U.S.C. § 1839(5)(A). zvelo's trade secret claims are deficient with respect to each of these elements.

---

[1] DTSA and CUTSA define misappropriation as the:

  (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

3

### (a) Element One: the facts alleged by zvelo do not support a plausible claim that it possessed relevant trade secrets.

In its Complaint, zvelo has failed to allege with sufficient specificity what allegedly misappropriated information constitutes a valid trade secret.[2] A trade secret must be comprised of information that is not generally known and not readily ascertainable by proper means. *See* 18 U.S.C. § 1836, et seq.; Colo. Rev. Stat. §§ 7-74-101, et seq. "Generally known or readily ascertainable" is a defendant-specific standard based on a defendant's own knowledge and experience. *See Microbiological Res. Corp. v. Muna*, 625 P.2d 690, 697-99 (Utah 1981) (recognizing that information published and commonly known in the trade is not a trade secret); *Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1312-13 (D. Utah 1999), *aff'd*, 251 F.3d 171 (Fed. Cir. 2000).

In support of its misappropriation claims, zvelo alleges that Akamai misappropriated information related to zvelo's proprietary database, "including but not limited to the lexicon of

---

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

  (I) Used improper means to acquire knowledge of the trade secret; or

  (II) At the time of disclosure or use, knew or had reason to know that such person's knowledge of the trade secret was:

    (A) Derived from or through a person who had utilized improper means to acquire it;

    (B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    (C) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

  (III) Before a material change of such person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

[2] DTSA defines a trade secret as, "financial, business, scientific, technical, economic, or engineering information" that "derives independent economic value, actual or potential, from not being generally known to, and *not being readily ascertainable through proper means by, another*

categories developed by zvelo and the billions of URLs categorized by zvelo." Dkt. 1 at ¶¶ 54, 66. If zvelo's claim is that the URLs (*i.e.*, the website addresses) in the zvelo database are trade secrets, zvelo has failed to allege facts sufficient to establish that URLs, which are available to anyone with internet access, are zvelo's trade secret.

If zvelo's claim is that the categories used in the database are its trade secrets, it has likewise failed to allege facts sufficient to support that claim. zvelo makes the conclusory allegation that it has a "unique and proprietary taxonomy of hundreds of categories" for URLs. However, the only specific factual allegation zvelo makes in this respect is that "categories can range from 'news' to 'pornography' to 'malicious software.'" *Id.* at ¶ 8. The subject matter of public websites—for instance the fact that www.cnn.com is a news website—is readily ascertainable. Even zvelo's categorization of every URL in its database is publicly available through a look-up tool on its website. *See* https://tools.zvelo.com/#!/check-a-url. zvelo's Complaint alleges no facts to support a claim that this publicly available and readily ascertainable information is nonetheless a trade secret.

zvelo also contends it possesses proprietary processes for determining which websites are active on a daily basis (Dkt. 1 at ¶ 14), and proprietary systems for classifying content and malicious detection (*Id.* at ¶ 16). However, zvelo does not contend that Akamai has used or

---

*person who can obtain economic value from the disclosure or use of the information*." 18 U.S.C. § 1839(3)(B) (emphasis added). CUTSA similarly defines a trade secret as, "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, *and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;* and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Colo. Rev. Stat. § 7-74-102(4)

5

disclosed any of these processes. Instead, zvelo alleges only that Akamai is using some unspecified portion of the URLs or categories that zvelo includes in its database. *See id.* ¶¶ 54, 55, 66, 67.

zvelo has failed to allege sufficiently specific facts to support a claim that its publicly-available and readily ascertainable categorization of URLs is a trade secret. Accordingly, it has failed to state a claim for trade secret misappropriation under either DTSA or CUTSA.

> **(b)  Element Two: the facts alleged by zvelo do not support a plausible claim that Akamai used zvelo's alleged trade secrets.**

zvelo's only allegation relating to Akamai's alleged use or disclosure of information from zvelo's database is the statement that zvelo has formed a "reasonable belief that Akamai's products and services that provide URL filtering functionality utilize the zvelo [database]." Dkt. 1 at ¶ 42. zvelo does not indicate how it formed this "belief." zvelo does not describe any evidence to support its belief. It does not state how Akamai allegedly acquired zvelo's information or when Akamai allegedly started using it. Nor does zvelo identify any specific zvelo URLs or categories it believes Akamai is using. zvelo does not even explain whether it contends that Akamai is using all of zvelo's database, or just some portion of the database. zvelo's conclusory statement regarding Akamai's alleged use of zvelo's "URL filtering functionality" is a quintessential example of a legal conclusion couched as a factual allegation and it is not sufficient to state a claim. *See Ciena Commc'ns, Inc.,* 2010 WL 3489915, at *2 (finding that plaintiff's conclusory allegation of use did not support a trade secret misappropriation claim and granting defendant's motion to dismiss); *see also Edifecs Inc. v. TIBCO Software Inc.*, 756 F. Supp. 2d 1313, 1320–21 (W.D. Wash. 2010) (dismissing trade secret claim as too speculative where plaintiff pled that several of its former employees were employed by defendant, but alleged no specific facts to

suggest that employees were using trade secrets in a way that amounted to misappropriation).

### (c) Element Three: zvelo fails to allege improper acquisition.

Not only has zvelo failed to allege any facts to support its claim that Akamai used its alleged trade secrets, it also has not alleged facts sufficient to support a conclusion that Akamai improperly acquired zvelo URL categorization information. For example, zvelo does not allege that any particular individual or group of individuals disclosed to Akamai zvelo's alleged trade secrets. Nor does zvelo allege that Akamai wrongly contracted with another entity to obtain zvelo's alleged trade secrets.

Indeed, not only is zvelo's Complaint devoid of any specific allegation that Akamai improperly acquired zvelo's alleged trade secrets, zvelo suggests in its Complaint that companies such as Akamai may validly be using information from the zvelo database, even if zvelo is unaware of such use. Thus, while zvelo asserts that *it* did not directly give Akamai permission to use its database (Dkt. 1 at ¶¶ 44-46), zvelo also acknowledges that none of its licensees have reported to zvelo whether they have provided products or services to Akamai which rely on zvelo's database. *Id.* at ¶ 47. Furthermore, zvelo admits that its database is "incorporated into offerings from many of the leading network security and web filtering vendors for domain name systems" (*Id.* at ¶ 12), and that its standard license agreement permits its customers to re-license its database as a part of one of those products (*Id.* at ¶ 39). zvelo also states that its licensees "generally" provide zvelo with a list of the companies to whom the licensees are selling their zvelo-based products or services, implying that its licensees do sometimes sell zvelo-based products or services to companies without reporting it to zvelo. (*Id.* at ¶ 40).

7

Accordingly, even taking all of zvelo's allegations as true—including its unsupported and conclusory allegations about use—zvelo implicitly concedes that Akamai and any other third-party could have legitimately acquired zvelo information from any one of "many" different network security and web filtering vendors authorized to re-license the zvelo database as a part of their products or services. *Id.* at ¶ 12. Because zvelo's allegations are completely compatible with proper conduct by Akamai, zvelo has failed to state a plausible claim that Akamai improperly acquired the alleged trade secrets. *See Ciena Commc'ns, Inc.*, 2010 WL 3489915, at *2, n.2 (citing *Twombly*, 550 U.S. at 567) (noting plaintiff in *Twombly* failed to state plausible claim where plaintiff pled that two defendants had engaged in parallel conduct that *might* be consistent with the required element of an agreement between the two defendants, and "'was not only compatible with, but indeed was more likely explained by, lawful unchoreographed free-market behavior.'").

### 2. zvelo Has Failed To State A Claim For Unjust Enrichment.

Plaintiff's third claim for relief—unjust enrichment—is preempted by CUTSA and is therefore barred as a matter of law. On its own terms, CUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," but "does not affect: (a) contractual remedies . . . (b) other civil remedies that are not based upon misappropriation of a trade secret; or (c) criminal remedies . . . ." Colo. Rev. Stat. § 7-74-108. CUTSA's preemption provision bars claims that "are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation." *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996).

Here, both zvelo's claim for unjust enrichment and its claim for misappropriation of trade secrets relate to zvelo's intellectual property, its alleged "proprietary database of categorized

8

URLs." *See* Dkt. 1, at ¶¶ 12, 54, 66, 77. There is no allegation that Akamai was unjustly enriched by any tangible property. As a result, zvelo's unjust enrichment claim is preempted under CUTSA.

### 3. Injunctive Relief Is Not A Claim For Relief.

Plaintiff's fourth claim is for injunctive relief. An injunction is an equitable *remedy* which must be based on an underlying cause of action—not a standalone cause of action. *See, e.g. Gates v. Sprint Spectrum*, 523 F.Supp.2d 1287, 1291 (D. Kan. 2007) (dismissing "claim" for injunctive relief pled as separate claim from underlying action for tort of trespass, on ground that an injunction is a remedy not an independent cause of action); *Booth v. Quantum3D, Inc*., C-04-5376 EMC, 2005 WL 1512138 at *4 (N.D. Cal., June 15, 2005) (dismissing "claim" for injunctive relief because injunctive relief is a remedy, not a cause of action). Plaintiff's claim for injunctive relief should be dismissed because it is not an independent cause of action. In addition, Plaintiff's conclusory statements that it "has sustained irreparable injury" (Dkt. 1 at ¶ 83) and that it is "left without an adequate remedy at law because, among other things, the damage to existing and prospective consumer relationships cannot be determined as a matter of law" (*Id.* at ¶ 84), do not include any supporting factual basis and are therefore insufficient to support any claim for relief.

### V.   CONCLUSION & REQUEST FOR RELIEF

For the foregoing reasons, Akamai respectfully requests that this Court GRANT Akamai's Motion and DISMISS zvelo's Complaint for failure to state a claim. Further, pursuant to and consistent with Colo. Rev. Stat. § 13-17-201, Akamai respectfully requests an award of reasonable attorneys' fees and all other relief to which it may be legally entitled.

9

Date:  February 8, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

By: /s/ Michael Strapp
Michael Strapp
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
T:  617.406.6000
F:  617.406.6147
michael.strapp@dlapiper.com

Allissa A.R. Pollard
Christopher B. Donovan
1000 Louisiana Street, Suite 2800
Houston, Texas 77002-5005
T:  713.425.8400
F:  713.425.8401
allissa.pollard@dlapiper.com
christopher.b.donovan@dlapiper.com

**WHEELER TRIGG O'DONNELL LLP**

Kathryn A. Reilly
Melissa L. Romero
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
T:  303.244.1800
F:  303.244.1879
reilly@wtotrial.com
romero@wtotrial.com

**COUNSEL FOR DEFENDANT
AKAMAI TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on February 8, 2019, I electronically filed the foregoing DEFENDANT AKAMAI TECHNOLOGIES, INC.'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Michael Strapp
Michael Strapp