**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-00097-PAB-SKC

ZVELO, INC.,

     Plaintiff,

v.

AKAMAI TECHNOLOGIES, INC.,

     Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

---

     Plaintiff zvelo, Inc. ("zvelo"), by and through its undersigned counsel, respectfully submits this Response in Opposition to Defendant Akamai Technologies, Inc.'s ("Akamai") Motion to Dismiss [Dkt. #28] (the "Motion").

**I.     INTRODUCTION.**

     In the Motion, Akamai seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), alleging that zvelo has failed to state a claim upon which relief may be granted. In support of its request, Akamai does not assert that zvelo failed to allege any element of its claims for relief. Instead, Akamai challenges the sufficiency of zvelo's allegations as well as offers convoluted legal analysis to support a finding that zvelo's claims are barred as a matter of law. Akamai's factual and legal analysis falls well short of the mark and its request for dismissal for failure to state a claim must be denied.

1

II.     **ARGUMENT**

    **A.     zvelo Alleges Facts Sufficient To Survive A Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).**

In the Motion, Akamai seeks dismissal of zvelo's claims on the grounds that zvelo has failed to assert a claim upon which relief may be granted.  The Motion must be denied as zvelo has pled more than enough allegations to support its claims.

        **1.     Legal Standard.**

To survive a motion to dismiss, a complaint must only contain sufficient factual content to make out a plausible claim for relief.  Further, on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the district court must "accept as true all well-pleaded factual allegations in the Complaint and view them in the light most favorable" to the plaintiff. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171 (10th Cir. 2015) (quotation marks and citation omitted).  The Rule 12(b)(6) standard does "not require that Plaintiff establish a prima facie case," only that the plaintiff "'nudge [his] claims across the line from conceivable to plausible' . . . ."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190, 1191-1192 (10th Cir. 2012) (quoting *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations of the complaint, and all favorable inferences drawn therefrom, need only "raise a right to relief above the speculative level."  *Pueblo of Jemez*, 790 F.3d at 1171 (quoting *Twombly*, 550 U.S. at 555). Applying this standard to the facts alleged in the Complaint, it is clear that zvelo has met its initial burden to plead plausible claims for relief, and the Court should deny the Motion.

        **2.     Defendant Fails to Demonstrate that zvelo's Claims for Trade Secret Misappropriation are Insufficient**.

It is undisputed that to make out a valid claim for infringement under the Defend Trade Secrets Act, 19 U.S.C. § 1836 ("DTSA") and or the Colorado Uniform Trade Secrets Act, C.R.S.

§§ 7-74-101, *et seq.* ("CUTSA"), a plaintiff must allege that: (1) it possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) defendant knew, or should have known, that the trade secret was acquired by improper means.  (Mot. at 3.)  zvelo alleges facts sufficient to meet all three elements.

> a.    **zvelo Alleges Fact Sufficient to Support a Finding that the zveloDB is a Legally Protectable Trade Secret**.

Under Colorado and federal law, a trade secret is protectable if the information that makes up the trade secret "is *secret* and of *value*," and "the owner thereof must have *taken measures* to prevent the secret from becoming available."  C.R.S. § 7-74-102 (emphasis added)[1]; 18 U.S.C. § 1839 (information is a protectable trade secret if "the owner thereof has *taken reasonable measures* to keep such information *secret*; and the information derives *independent economic value* . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.").  The determination of what information constitutes a trade secret is a question of fact for the trial court.  *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 521 (Colo. App. 2011).  Colorado courts "may consider several factors to make the factual determination of whether a trade secret exists under this statutory definition, including: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, such as the employees; (3) the precautions taken by the holder of the trade secret to

---

[1] Defendant incorrectly quotes the definition of a trade secret under CUTSA, C.R.S. § 7-74-102(4).  Defendant states that the plain language of CUTSA requires that a trade secret must "not be[] readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use."  (Mot. at 3-4, fn.1.)  This language is simply not in the statute.  C.R.S. § 7-74-102.  The remainder of Defendant's "quotation" of the CUTSA trade secret definition is generally similar to, but not a word-for-word replica of, the actual C.R.S. § 7-74-102.

guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information." *Saturn Sys., Inc.*, 252 P.3d at 521–22 (citing *Network Telecomms., Inc.*, 790 P.2d at 903).

In the Complaint, zvelo alleged facts sufficient to make a threshold showing that the zveloDB is a protectable trade secret. The zveloDB is a massive collection of URLs and intricate categorizations of those URLs that provides custom URL filtering. (Compl. ¶¶ 12–19.) zvelo takes meticulous steps to protect the secrecy of the zveloDB, including limiting and monitoring internal access and strictly protecting third-party access through licensing agreements. (*Id.* ¶¶ 20–33.) Further, the zveloDB is highly valuable due to its vast collection of billions of URLs, its categorization of these URLs in a matrix of nearly 500 categories, and its unique ability to maintain an up-to-date reflection of active web use. (*Id.* ¶¶ 11–19.) These aspects of the zveloDB, among others, make the zveloDB a valuable product for zvelo customers, and zvelo requires any licensee to pay license fees for use of the zveloDB. (*Id.* ¶¶ 11–19, 34–39.)

In the Motion, Akamai does not contest (i) that the zveloDB is valuable, (ii) that the zveloDB is secret, and (iii) that zvelo takes reasonable measures to protect the secrecy of the zveloDB. (Mot. at 4-6.) Instead, Akamai takes the novel approach of *adding* additional threshold requirements to qualify as a trade secret and then knocking down the proverbial straw man by arguing that zvelo's allegations fail to meet the additional requirements. Specifically, Akamai argues—without citing legal authority—that a purported trade secret is not valid if it

contains individual components that are generally known or readily ascertainable.  (Mot. at 5-6.) Akamai goes on to argue that the zveloDB should be disqualified as a valid trade secret on the grounds that individual URLs "are available to anyone with internet access" and that "[t]he subject matter of public websites . . . is readily ascertainable."  (*Id*. at 5.)  Akamai's argument must be rejected as a matter of law.

There is no requirement under either DTSA or CUTSA that each individual component of a trade secret must not be readily ascertainable.  To the contrary, under both DTSA and CUTSA, a trade secret may consist of a compilation of elements that each individually are generally known or readily ascertainable as long as the combination as a whole is protectable. For example, the Tenth Circuit has held that a "trade secret [under CUTSA] can exist in a *combination of characteristics and components* each of which, by itself, is in the public domain, but *the unified process, design and operation of which*, in unique combination, affords a competitive advantage and is a protectable secret." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1109 (10th Cir. 2009) (citation omitted) (emphasis added); *see also Rivendell Forest Prods., Ltd. v. Ga.-Pac. Corp.*, 28 F.3d 1042, 1046 (10th Cir.1994) (applying CUTSA).  Federal case law is similarly clear that under DTSA, a protectable trade secret can consist of a compilation of publically available elements. *Zoecon Indus., a Div. of Zoecon Corp. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179–80 (5th Cir. 1983) (interpreting the DTSA and holding that even information that is readily available may be a trade secret when some of the information "could be compiled *only at considerable expense*") (emphasis added); *United States v. Liew*, 856 F.3d 585, 598, 603 (9th Cir. 2017).

5

In the Motion, Akamai pointedly ignores that the zveloDB is a *compilation* of "billions of categorized URLs from a taxonomy of nearly 500 categories and covers 99.9% of active websites." (Compl. ¶ 18.)  Further, it is undisputed that this compilation of information is the direct result of tens of thousands of hours of work and the application of unique and proprietary contention classification and malicious detection systems.[2]  (*Id.* ¶¶ 16-18.)  Thus, even if the Court were to accept Akamai's *theory*—unsupported by anything more than a handful of conjectures regarding URLs and categories—that individual URLs and categories are readily ascertainable, Akamai fails to offer any law or analysis disputing that the *compilation* of *billions* of categorized URLs amassed over a *decade* of labor is not sufficient to constitute a protectable trade secret under applicable Colorado or federal law.  *Cf Hertz*, 576 F.3d at 1114–15 (holding that "[a] customer list can be a trade secret when it is the end result of a long process of culling the relevant information from lengthy and diverse sources, even if the original sources are publicly available.") (citations omitted).

For the reasons set forth above, Akamai's argument that the zveloDB is not a protectable trade secret because individual URLs are publicly available must be rejected as a matter of law.

      b.      **zvelo alleges facts sufficient to support a finding that Akamai used the zveloDB without zvelo's authorization**.

Akamai next challenges the sufficiency of zvelo's pleadings by arguing that zvelo's allegations that Akamai used or disclosed zvelo's trade secret are "conclusory" and lack sufficient detail.  (Mot. at 6-7.)  In the Complaint, zvelo alleges that, using publicly available

---

[2] Akamai correctly argues that zvelo does not allege that it used or misappropriated any of these proprietary services.  However, Akamai's argument misses the point.  The fact that zvelo developed proprietary technology to create the zveloDB underscores the valuable and unique nature of the information compiled in the zveloDB.

information and its own security measures, it was able to form a reasonable belief that Akamai products and services that provide URL filtering functionality utilize the proprietary URLs and categorizations incorporated by zvelo into the zveloDB.  (Compl. ¶¶ 42-43.)  Akamai fails to cite *any* law that supports a finding that the foregoing allegations are insufficient to meet the second element of a claim for trade secret misappropriation.

The dearth of legal citation is not the result of an oversight—there is no legal requirement that a plaintiff allege the type of details that Akamai claims are missing.  To require zvelo to identify in the Complaint each piece of information from the zveloDB that is used by Akamai's URL filtering products in order to maintain a claim for trade secret misappropriation would be tantamount to requiring zvelo to have an intimate understanding of the inner workings of Akamai's products and the databases that they rely upon.  Akamai does not allege that such information is even *accessible* to zvelo.  Moreover, Akamai does not deny that it offers products and services that provide URL filtering functionality and that those products and services utilize a database of categorized URLs to function.  zvelo alleges that Akamai's products and services that provide URL filtering functionality "utilize the proprietary URLs and categorizations incorporated by zvelo into the zveloDB."  (Compl. ¶ 43.)  The district court must "accept as true all well-pleaded factual allegations in the Complaint and view them in the light most favorable" to the plaintiff.  *Pueblo of Jemez*, 790 F.3d at 1171 (quotation marks and citation omitted).  Here, accepting all well-pleaded factual allegations as true and viewing in the light most favorable to zvelo, zvelo has sufficiently alleged that Akamai used zvelo's trade secret.

Further, the cases that Akamai relies upon are clearly distinguishable from the matter here.  In *Ciena Commc'ns, Inc.*, the plaintiff alleges "only that [defendants] have

misappropriated, or threaten to misappropriate, [plaintiff's] trade secrets for the purpose of using and exploiting such information." *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010). The *Ciena* court explains that such allegation was insufficient because "it does not explain what specific facts [] led [plaintiff] to the conclusion that [defendant] has misappropriated or threatens to misappropriate the trade secrets." *Id.* However, in contrast, zvelo ***does*** explain how it came to believe that Akamai was using its trade secrets. In addition to using the publically-available information and the zveloDB security features, zvelo explained that it had not granted Akamai any permission or access to use the zveloDB, nor did it have any reason to believe any of its clients had granted such permission or use. (Compl. ¶¶ 41-48.) Because zvelo alleged specific facts as to why it believes Akamai used zvelo's trade secret, it is distinguishable from the conclusory allegations in *Ciena*, and should not be dismissed.[3]

> c.    **zvelo alleges facts sufficient to support a finding that Akamai improperly acquired the zveloDB**.

In a transparent effort to make an argument merely for the sake of making an argument, Akamai finally contends that zvelo failed to adequately plead that Akamai used the zveloDB without permission. (Mot. at 7-8.) Akamai's argument is undercut by its own admissions. As Akamai notes, zvelo pleads that it did not provide Akamai with a copy of the zveloDB or authorization to access the zveloDB. (Mot. at 7; Compl. ¶¶ 44–46.) Akamai then conspicuously *ignores* zvelo's other pleadings, namely that none of zvelo's licensees have reported providing the zveloDB to Akamai. (Compl. ¶¶ 47–48.) Instead, Akamai focuses on a more general

---

[3] To the extent that this Court desires further information as to the process by which zvelo reached the conclusion that Akamai had misappropriated its trade secret, the remedy should be amendment of the Complaint to provide the requested details, not dismissal of the Complaint.

allegation and alleges that an ambiguity exists.  (Mot. at 8.)  Akamai cannot manufacture an ambiguity by simply ignoring zvelo's allegations.

As these allegations make clear, zvelo has not authorized Akamai to have or use the zveloDB.  These allegations meet the requirement that zvelo plead facts sufficient to support a finding that its trade secret was used without its consent.  No ambiguity exists in zvelo's pleadings.  As to Akamai's argument that zvelo failed to identify how Akamai obtained the zveloDB, there is no requirement that a plaintiff identify the source of misappropriated trade secret information to maintain a claim.

Akamai fails to assert any legal or factual basis that the allegations in the Complaint are insufficient to sustain a claim of misappropriation of trade secret.  Therefore, the Court should deny the Motion.

> **3.     Unjust Enrichment is Not Preempted by CUTSA Because Akamai Could be Liable for Interference with Business Relations**.

Akamai seeks dismissal of zvelo's claim for unjust enrichment on the grounds that it is preempted by CUTSA because it is "relate[d] to zvelo's intellectual property."  (Mot. at 8.) Akamai's argument flies in the face of the law that Akamai relies upon.

In *Powell*, the Court attempted to determine the scope of the language in CUTSA relating to the preemption of certain common law claims.  After recognizing the dearth of law on the subject, Judge Babcock noted: "It is *neither necessary nor prudent* to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets." *Powell Prod., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996) (emphasis added).  Judge Babcock went on to hold that a claim that does not depend upon the information in question qualifying as a trade secret is not preempted by CUTSA.  *Id.*

zvelo's claim for unjust enrichment in no way depends upon the zveloDB qualifying as a trade secret.  To the contrary, as pled, zvelo's claim for unjust enrichment is predicated on the allegation that Akamai has retained benefits that are the result of zvelo's investment of time, money and other resources without providing zvelo with compensation.  (Compl. ¶¶ 76–79.) These allegations do not depend on whether the zveloDB contains trade secret information. Akamai's exploitation of zvelo's efforts—the fruits of which zvelo licensed commercially— without providing compensation to zvelo would constitute actionable unjust enrichment regardless of whether the information was secret or even proprietary.[4]  Akamai's attempt to dismiss zvelo's claim for unjust enrichment must be denied.

>      **4.    Injunctive Relief is the Proper Relief Regardless of Whether It is Independently Pled**.

DTSA and CUTSA specifically allow courts to grant "[t]emporary and final injunctions" to "prevent or restrain actual...misappropriation of a trade secret."  C.R.S. § 7-74-103; 18 U.S.C. § 1836(b)(3) (stating substantially the same language).  Out of an abundance of caution, zvelo has pled injunctive relief as a cause of action in addition to listing it in the requested relief.  To the extent the Court deems an independent cause of action unnecessary, the form of the relief sought may change, but the substance of the injunctive relief will remain the same.

## III.   CONCLUSION.

For the foregoing reasons, zvelo respectfully requests that the Motion be denied.

---

[4] Akamai's assertion that zvelo failed to allege that it was "unjustly enriched by any tangible property" is also a misreading of *Powell*.  The *Powell* court examines whether a *conversion* claim that is based on the conversion of trade secret property and on other physical items stolen, including blueprints and drawings, is preempted by CUTSA.  zvelo does not assert a claim for conversion in this matter and therefore whether its property is tangible is irrelevant.

4813-8345-9720.2

Respectfully submitted this 1st day of March, 2019.

KUTAK ROCK LLP

*s/ Chad T. Nitta*
Chad T. Nitta
Elizabeth J. Field
1801 California St., Suite 3000
Denver, CO 80202
Tel:  303-297-2400
chad.nitta@kutakrock.com
elizabeth.field@kutakrock.com

*ATTORNEYS FOR PLAINTIFF*

4813-8345-9720.2

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2019, I electronically filed the foregoing

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following

e-mail addresses:

Kathryn A. Reilly
Melissa L. Romero
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202
Tel: 303-244-1800
reilly@wtotrial.com
romero@wtotrial.com
*Attorneys for Defendant*

Allissa A. R. Pollard
Christopher B. Donovan
DLA Piper LLP (US)
1000 Louisiana St., Suite 2800
Houston, TX 77002
Tel: 713-425-8400
Allissa.pollard@dlapiper.com
Christopher.b.donovan@dlapiper.com
*Attorneys for Defendant*

Michael G. Strapp
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Tel: 617-406-6000
michael.strapp@dlapiper.com
*Attorneys for Defendant*

*s/ Chad T. Nitta*
Chad T. Nitta
KUTAK ROCK LLP
1801 California St., Suite 3000
Denver, CO 80202
Tel: 303-297-2400
chad.nitta@kutakrock.com

4813-8345-9720.2