IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00097-PAB-SKC

ZVELO, INC.,

    Plaintiff,

v.

AKAMAI TECHNOLOGIES, INC.,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on Defendant Akamai Technologies, Inc.'s Motion to Dismiss [Docket No. 28]. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

**I. BACKGROUND**

Plaintiff zvelo, Inc. is a technology company that offers a database of categorized website addresses, or Uniform Resource Locators ("URLs"), for purposes of domain name filtering, content filtering, parental controls, content categorization, and other purposes. Docket No. 1 at 3, ¶ 12. This type of technology allows companies to filter or block access to certain websites on the companies' computers. *Id.* at 2, ¶ 7. Because websites differ so widely, filtering websites based on form or content can be difficult. *Id.*, ¶ 8. Thus, plaintiff's database assigns categories to each unique URL, such as "news" or "malicious software," so that users can filter or block websites based on category. *Id.* at 2-3, ¶¶ 8-9. Plaintiff also compiles data about URLs that are

actively visited to keep its database up-to-date on active and inactive websites. *Id.* at 3-4, ¶ 14. Plaintiff calls its knowledge of active websites the "zvelo Active Web," which, along with the categorizations of the URLs, make up plaintiff's database – the "zveloDB." *Id.* at 4, ¶ 15. Plaintiff contends its database is unique and valuable intellectual property that would be challenging for another company to recreate. *Id.* at 3-4, ¶ 14.

Defendant Akamai Technologies, Inc. is a company that offers products and services that provide URL filtering functionality. *Id.* at 8, ¶ 41. Plaintiff alleges that defendant's products and services that provide this URL filtering functionality utilize plaintiff's database and the proprietary information contained therein. *Id.* at 8-9, ¶¶ 42-43. This allegation is based upon "information made available to the public by [defendant] as well as security measures that [plaintiff] has incorporated" into its database. *Id.* at 8, ¶ 42.

Plaintiff filed this lawsuit on January 10, 2019, raising claims of (1) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, (2) trade secret misappropriation under the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-74-101, *et seq.*, and (3) unjust enrichment. Docket No. 1 at 9-13. Plaintiff also seeks injunctive relief. *Id.* at 14. On February 8, 2019, defendant filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket No. 28. Plaintiff filed a response, Docket No. 38, to which defendant replied. Docket No. 46.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (omission marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [its] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to

sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

## III. ANALYSIS

### A. Trade Secret Misappropriation

Defendant first argues that plaintiff's trade secret misappropriation claims under DTSA and CUTSA should be dismissed for failure to state a claim. Docket No. 28 at 3. To prevail on a claim for misappropriation of trade secrets under Colorado law, a plaintiff must show: "(i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). CUTSA defines "trade secret" as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." Colo. Rev. Stat. § 7-74-102(4). To constitute a trade secret, "the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." *Id.*

Under Colorado law, "[w]hat constitutes a 'trade secret' is a question of fact for the trial court." *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1257 (D. Colo. 2005). Courts look to several factors to make this determination, including:

(1) the extent to which the information is known outside the business,
(2) the extent to which it is known to those inside the business, i.e., by the

4

> employees[,] (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id.* (internal quotation marks omitted). The Tenth Circuit has held that, under Colorado law, "a trade secret can exist in a combination of characteristics, each of which, considered separately, is in the public domain, but, taken together, may yield a competitive advantage that results in a protectable trade secret." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1130 (10th Cir. 2003).

Similar to the requirements under Colorado law, a plaintiff asserting a claim for misappropriation of trade secrets under DTSA must establish: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018). Like CUTSA, DTSA defines "trade secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as "the owner thereof has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to," or ascertainable by, another person. 18 U.S.C. § 1839(3). Due to the similarities in the pleading requirements under DTSA and CUTSA, the Court will address the claims'

elements together.

### 1. *Existence of Trade Secrets*

First, defendant argues that plaintiff has failed to allege sufficient facts to demonstrate that the information at issue here constitutes a valid trade secret. Docket No. 28 at 4. More specifically, defendant argues that none of the areas in which plaintiff claims it owns trade secrets constitutes trade secrets because all of its examples go to publicly available information. *Id.* at 4-6. For example, it argues that the URLs contained in plaintiff's database are "available to anyone with internet access," and that plaintiff's categorizations used in its database are likewise publicly available and readily ascertainable information. *Id.* at 5. Defendant counters that, while individual components of its trade secret information may be readily ascertainable, its compilation of URLs and categorization constitutes a valid trade secret. Docket No. 38 at 5.

As set out above, "a trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1109 (10th Cir. 2009) (quoting *Shidler*, 338 F.3d at 1129 (applying Colorado law)). Further, "compilations" may be considered trade secrets under DTSA. 18 U.S.C. § 1839(3).

Plaintiff's complaint alleges the misappropriation of a database containing "billions of categorized URLs from a taxonomy of nearly 500 categories" that "covers 99.9% of active websites." Docket No. 1 at 4, ¶ 18. Plaintiff also alleges that it "has invested tens of thousands of hours compiling the training and testing data in creating

and maintaining" the database, *id.*, ¶ 17, and that it would be "technically and practically challenging for another company to recreate" this "unique and valuable intellectual property." *Id.*, ¶ 14.

Considering the relevant factors, the Court finds that plaintiff has adequately pled that its database constitutes a trade secret under both CUTSA and DTSA. While individual URLs may be known outside of its business, plaintiff alleges that the compilation itself is not, as "[p]otential customers are required to execute a strict confidentiality and non-disclosure agreement before they are allowed access to the" database. Docket No. 1 at 5-6, ¶ 25. Moreover, plaintiff limits access to the database to fewer than five zvelo employees who are allowed to access the entirety of the database or to make changes to it. *Id.* at 5, ¶ 23. Other employees are allowed limited access in the course of performing their required job functions. *Id.* This limited access inside and outside the business demonstrates precautions taken by plaintiff to guard the secrecy of the information. Given that plaintiff alleges that it has "invested tens of thousands of hours compiling the training and testing data used in creating and maintaining" the database, *id.* at 4, ¶ 17, and that it would be technically and practically challenging for another company to recreate this database, *id.*, ¶ 14, the Court finds that plaintiff has sufficiently alleged that it derives value from the trade secret and that it would take great time and expense for others to acquire and duplicate the information. 18 U.S.C. § 1839(3); *Doubleclick*, 402 F. Supp. 2d at 1257. For these reasons, the Court finds that plaintiff adequately pled that its database constitutes a trade secret under CUTSA and DTSA.

### *2. Acquisition or Use of Trade Secrets Without Consent*

Defendant next argues that plaintiff failed to properly allege that defendant used plaintiff's trade secrets because, according to defendant, plaintiff alleged nothing more than that it had formed a "reasonable belief that [defendant's] products and services that provide URL filtering functionality utilize [plaintiff's database]." Docket No. 28 at 6 (citing Docket No. 1 at 8, ¶ 42). Plaintiff argues that its allegation is sufficient for purposes of Rule 12(b)(6) because it properly explained its "reasonable belief" by indicating that its belief was formed based on "information made available to the public by [defendant] as well as security measures [plaintiff had] incorporated into" the database. Docket No. 38 at 7 (citing Docket No. 1 at 8-9, ¶¶ 42-43).

In *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163 (D. Colo. 2018), the Court dismissed a trade secret misappropriation claim that "lack[ed] any specific factual allegations of disclosure of trade secrets . . . and also lack[ed] any specific factual allegations of how" the defendant had allegedly used those trade secrets. *Id.* at 1175. Instead, the plaintiff's complaint had "simply allege[d] in conclusory fashion" that the defendant had "used . . . confidential information (including . . . trade secrets) to launch its operations." *Id.* at 1176. The Court found that such allegations were insufficient to state a claim of trade secret misappropriation. *Id.* Additionally, in *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-cv-02845-MSK-MJW, 2010 WL 3489915 (D. Colo. Aug. 31, 2010), the court determined that an allegation that the defendant had misappropriated, or threatened to misappropriate, the plaintiff's trade secrets "for the purpose of using and exploiting such information" was conclusory and did not provide a

8

sufficient factual basis to avoid dismissal under Rule 12(b)(6). *Id.* at *4. Specifically, the court noted that the complaint "[did] not explain what specific facts [had] led [the plaintiff] to the conclusion that [the defendant] ha[d] misappropriated or threaten[ed] to misappropriate the trade secrets." *Id.* The claim was dismissed under Rule 12(b)(6). *Id.* at *6.

Here, the Court finds that, like *RE/MAX* and *Ciena*, plaintiff's complaint lacks sufficient factual averments to meet the plausibility standard. In its complaint, plaintiff alleges that it has formed a "reasonable belief" that defendant's products use its database. Docket No. 1 at 8, ¶ 42. This allegation is based upon "information made available to the public" by defendant, as well as "security measures" that have been incorporated into the database. *Id.* While such an allegation meets the standard set out in Rule 11 of the Federal Rules of Civil Procedure, a "reasonable belief" is not necessarily sufficient to meet the plausibility standard of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). References to "information made available to the public" and the database's "security measures," without additional allegations setting forth facts demonstrating how the public information or security measures identify unauthorized use, does not provide sufficient information to meet the plausibility standard required under Rule 12(b)(6).

Plaintiff claims that it uses "markers" within its database, known only to plaintiff, that can be used to determine if a commercial product or service is using the database.

9

Docket No. 1 at 7, ¶ 33. However, plaintiff does not allege that these markers helped form the basis of its reasonable belief of misappropriation – it states only that it relied upon "information made available to the public" and "security measures . . . incorporated into" the database. *Id.* at 8, ¶ 42. In fact, plaintiff alleges that it uses the markers only to determine whether a customer continues to use the database after termination or expiration of a license. *Id.* at 7, ¶ 33. Plaintiff does not allege that the markers can detect whether non-customer third parties are utilizing the database. *Id.* Moreover, as defendant argues, third parties like defendant are permitted to acquire the right to use information in the database from plaintiff's licensees, Docket No. 46 at 4-5, and there is no allegation that plaintiff can distinguish authorized third-party use from unauthorized third-party use. *See* Docket No. 1. Thus, plaintiff's allegations fail the plausibility test.

Courts should generally grant leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court finds no reason to deny plaintiff an opportunity to amend its complaint on its first two claims and finds that justice requires granting leave to amend here. The Court will grant plaintiff leave to amend its complaint on its trade secret misappropriation claims.

### B. Unjust Enrichment

Defendant next argues that plaintiff's unjust enrichment claim must be dismissed

because the claim is preempted by CUTSA. "CUTSA preempts common law claims that 'conflict' with its trade secret misappropriation provisions." *Abbott Labs. v. Finkel*, No. 17-cv-00894-CMA, 2017 WL 5517399, at *3 (D. Colo. Nov. 17, 2017) (citing *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996)); *see also* Colo. Rev. Stat. § 7-74-108(1) ("[T]his article displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret"). "The question of whether CUTSA applies to preempt a common-law claim of unjust enrichment is determined by inquiring as to whether the alleged enrichment is, in essence, one which turns on the misappropriation of information that CUTSA defines as a 'trade secret.'" *Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc*., No. 13-cv-00143-MSK-BNB, No. 13-cv-00415-MSK-BNB, 2014 WL 103812, at *4 (D. Colo. Jan. 10, 2014). "If a plaintiff alleges that the defendant was unjustly enriched by its misappropriation of business data that, although valuable, does not meet the statutory definition of 'trade secret,' unjust enrichment provides the proper remedy." *Id.*

Although plaintiff states that its unjust enrichment claim is not preempted by CUTSA because defendant "[c]ould be [l]iable for [i]nterference with [b]usiness [r]elations," Docket No. 38 at 9, it provides no argument to support that theory, *see id.* at 9-10, and has not raised an interference with business relations claim. *See* Docket No. 1. Instead, plaintiff claims that its unjust enrichment claim is not preempted because "a claim that does not depend upon the information in question qualifying as a trade secret is not preempted by CUTSA." Docket No. 38 at 9.[1]

---

[1] In support of its argument, plaintiff relies upon *Powell Products*, 948 F. Supp. at 1469, which the Court finds distinguishable. In *Powell*, the court determined that the

As another court in this district has explained, "CUTSA provides a broad remedy for 'misappropriations' of trade secrets . . . [i]n such situations, the owner of the trade secret may recover [under CUTSA] for 'the actual loss caused by [the use of the secret]' as well as any unjust enrichment that the defendant obtained as a result of that use." *Wolf Auto*, 2016 WL 10570867, at *3 (quoting Colo. Rev. Stat. § 7-74-102(2)(b)). "[T]he damages that a plaintiff may recover based on the defendant's use of a stolen trade secret are effectively the same regardless of whether the claim is brought under CUTSA or styled as [an unjust enrichment] claim." *Id.* Thus, an unjust enrichment claim based upon trade secret misappropriation is fully incorporated by, and preempted by, the CUTSA claim. *Id.*

As such, the relevant inquiry is whether the misappropriated information constitutes a trade secret under the statutory definition – if so, CUTSA is the exclusive statute of remedy. *Animal Care Sys.*, 2014 WL 103812, at *4. As set out above, CUTSA defines "trade secret" as "the whole or any portion or phase of any scientific or technical information, . . . confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value" so long as the owner has taken "measures

---

plaintiff's interference with business relations claim was not preempted by CUTSA because, even though the plaintiff had alleged that the defendant had misappropriated plaintiff's trade secrets and, in so doing, had interfered with plaintiff's business relationships, the interference claim "[did] not depend upon the information in question qualifying as trade secrets." *Id.* at 1474. But where, as here, CUTSA expressly provides a remedy for unjust enrichment resulting from trade secret misappropriation, the relevant inquiry is – contrary to plaintiff's argument – whether the claims turn on the misappropriation of materials that are or are not classified as trade secrets. *Wolf Auto Ctr. Sterling, LLC v. Shadegg*, No. 15-cv-01035-MSK-KLM, 2016 WL 10570867, at *3 (D. Colo. Oct. 31, 2016). If they are, the claim is preempted. *Id.*

to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Colo. Rev. Stat. § 7-74-102(4).

In its complaint, plaintiff alleges that defendant misappropriated "a proprietary database of categorized URLs." Docket No. 1 at 3, ¶ 12. Notably, this is the same material from which plaintiff claims defendant was unjustly enriched. Plaintiff asserts that it "has invested and continues to invest substantial time, money, and other resources in developing the [database]"), *id.* at 13, ¶ 77, and that defendant "has received the benefit of the substantial time, money, and other resources that [plaintiff] has invested in developing the [database], including by receiving money for products and services that rely on the [database]." *Id.*, ¶ 78. Plaintiff has not alleged that defendant was unjustly enriched through any means other than its trade secrets, such as misappropriation of tangible property. *See L-3 Commc'ns Corp. v. Jaxon Engineering & Maintenance, Inc.*, 863 F. Supp. 2d 1066, 1087 (D. Colo. 2012) (unjust enrichment claim not preempted where plaintiff alleged misappropriation of physical equipment and misuse of internal computer resources). Because plaintiff's unjust enrichment claim is fully incorporated by, and therefore preempted by, CUTSA, the Court will dismiss the claim.

### C. Injunctive Relief

Finally, defendant seeks dismissal of plaintiff's injunctive relief claim because "[a]n injunction is an equitable remedy which must be based on an underlying cause of action" and is "not a standalone cause of action." Docket No. 28 at 9. Plaintiff states that "[o]ut of an abundance of caution, [it pled] injunctive relief as a cause of action in

13

addition to listing it in the requested relief" and states that "[t]o the extent the Court deems an independent cause of action unnecessary, the form of the relief sought may change, but the substance of the injunctive relief will remain the same." Docket No. 38 at 10.

"[I]njunctive relief is not a separate cause of action; rather it is one form of the relief for the other legal violations alleged." *Burns v. Freddie Mac*, No. 13-cv-2109-WJM-KLM, 2014 WL 1242032, at *2 n.1 (D. Colo. Mar. 26, 2014). "The Court thus interprets the request for injunctive relief as the relief [plaintiff] would seek should [it] prevail on the merits of [its] claims." *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018). Because the Court has dismissed plaintiff's substantive claims, there is no remaining claim for which plaintiff could seek injunctive relief. As a result, the Court dismisses plaintiff's complaint in its entirety.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Akamai Technologies, Inc.'s Motion to Dismiss [Docket No. 28] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that plaintiff's third and fourth claims are **DISMISSED** with prejudice. It is further

**ORDERED** that plaintiff is granted leave to amend its first and second claims. Plaintiff shall file any amended complaint by October 31, 2019.

DATED September 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge